# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

———————————————

Nº 19-CV-3886 (CBA) (RER)

———————————————

RQ INNOVASION, INC.,

Plaintiff,

VERSUS

CARSON OPTICAL, INC. AND RICHARD CAMERON,

Defendants.

————————————

**REPORT & RECOMMENDATION**
————————————

**August 21, 2019**

**To the Honorable Carol Bagley Amon**
**Senior United States District Judge**

**RAMON E. REYES, JR., U.S.M.J.:**

RQ Innovasion, Inc. ("Plaintiff") initiated this action against Carson Optical, Inc. and Richard Cameron (collectively, "Defendants") on July 2, 2019. (Dkt. No. 1 ("Compl.")). Plaintiff alleges that Defendants infringed its registered trademark, in violation of 15 U.S.C. § 1114(1); that Defendants violated federal prohibitions on false designations of origins, 15 U.S.C. 1125(a)(1)(B); that Defendants have engaged in unfair competition under common law; and that Defendants have committed unfair and deceptive trade practices in violation of New York General Business Law Section 349. (Compl. ¶¶ 42–69). At the crux of Plaintiff's claims is the allegation that Defendants have caused videos about their products to appear on Plaintiff's listing page on Amazon.com, such that the videos appear to have been produced by Plaintiff. Presently before the Court is Plaintiff's motion for a temporary restraining order ("TRO") and preliminary injunction (Dkt. No. 2). Plaintiff seeks an order from Your Honor restraining and enjoining Defendants from dealing in any products or advertisements bearing Plaintiff's trademarks, otherwise infringing Plaintiff's trademarks or other rights, or "engaging in any act" likely to cause confusion among the consumer public as to Defendants' products' origins or affiliations with Plaintiff. (Dkt. No. 2 at p. 2). Your Honor has referred this motion to me for a report and recommendation. (Order dated 7/29/2019). For the reasons set forth herein, I respectfully recommend that Your Honor deny the motion.

## I. Factual and Procedural Background

### A. The Parties

Plaintiff, which does business as "Fancii," is a Canadian corporation involved in the direct-to-consumer sale and distribution of magnifying products, including jewelers' loupes. (Compl. ¶¶ 1, 10, 12). Plaintiff launched in Canada in 2014 and has since "grown into an internationally-recognized brand."[1] (*Id.* ¶ 11). Plaintiff's products have been featured on QVC and are sold on online retail outlets including Urban Outfitters, Amazon.com ("Amazon"), Amazon Canada, and www.Fancii.com. (*Id.* ¶ 17). Plaintiff describes its sales through Amazon as "critical," in part because its success on the site has attracted "further attention and good will to the brand." (*Id.* ¶ 18).

Plaintiff owns the trademark "FANCII®" (the "FANCII® Word Mark"), which was registered in the United States Patent and Trademark Office ("USPTO") on February 23, 2016, and the design mark "Fancii®" (the "Design Mark"), which was registered in the USPTO on April 24, 2018. (*Id.* ¶ 13; Dkt. No. 2-2 ("Zheng Decl.") at pp. 6, 9).[2] Plaintiff has used the Word Mark in commerce since June 2015 and has used the Design Mark in commerce since August 2015. (Compl. ¶ 13). Each Mark was registered in Class 9 for "magnifying glasses." (*Id.*; Zheng Decl. at pp. 6, 9).

Plaintiff avers that it uses the Marks as "source identifiers in conjunction with a variety of products, including magnifying glasses, jewelers' loupes and beauty products [that] includ[e] magnifying features," and that it has "established a reputation and goodwill in its products." (Compl. ¶ 15). Plaintiff asserts that the Marks are unique and inherently distinctive, and that their distinctiveness is enhanced through their "association with Fancii's business and various product[s] sold throughout the world." (*Id.*). Plaintiff attributes the Marks' "widespread recognition in the field of beauty and optical products" to Plaintiff's "substantial" expenditures of "time, effort and money." (*Id.* ¶ 16).

Defendant Carson Optical, Inc. ("Carson") is a New York corporation that markets and sells various magnification products, including on Amazon. (*Id.* ¶ 29; Dkt. No. 6 ("Cameron Decl.") ¶¶ 2–4, 6). Defendant Richard Cameron ("Cameron") is Carson's President, a position he has occupied since the company's inception. (Cameron Decl. ¶ 1). Plaintiff alleges that Cameron directed the wrongful conduct that gave rise to this action; that at all relevant times there has been "a unity of interest between and among [D]efendants vis-à-vis the ownership, operation, and/or management of Carson"; and that Cameron so dominates and controls Carson that the two may be considered interchangeable. (Compl. ¶¶ 3–5).

The parties are acknowledged competitors (*see* Compl. at p. 4; Cameron Decl. ¶ 9), and they have a contentious relationship. Carson has twice sued Plaintiff (together with Plaintiff's

---

[1] Unless otherwise indicated, these facts are derived from the parties' papers. Accordingly, the Court does not accept them as absolute fact. I have omitted the phrase "Plaintiff avers" from most sentences merely for the sake of verbal economy.

[2] Plaintiff also purports to own the trademark "FANCII®" (the "Beauty Mark"), which was registered in the USPTO on April 24, 2018, in Classes 8, 11, 20, and 21 for various beauty products. (Compl. ¶ 14). However, Plaintiff does not submit a Registration Certificate for this Mark; the Certificate submitted is identical to the Certificate for the Word Mark. (Zheng Decl. ¶ 7 and at p. 12). This omission has no dispositive effect, but the Court notes it in the interest of clarity.

founder, Brendan Zheng) in this District. (Cameron Decl. ¶¶ 10, 16); *see Carson Optical, Inc. v. RQ Innovasion, Inc. and Brendan Zheng*, No. 2:16-CV-1157 (SJF) (SIL); *Carson Optical, Inc. v. Alista Corp., Nasr Amr, RQ Innovasion, Inc. and Brendan Zheng*, No. 2:19-CV-1725 (SJF) (AKT). Both suits were predicated on false advertising claims. (Cameron Decl. ¶¶ 10, 16). Other than this competitive and at times acrimonious history, the companies have no "association, affiliation, sponsorship, or [other] connection" with each other. (Compl. ¶¶ 30, 37).

###### B. The Alleged Misconduct

This case centers on an Amazon feature known as related short videos ("related videos" or "video shorts"), which Plaintiff describes as brief, infomercial-style videos that "*customers, manufacturers and sellers*" can upload to product pages.[3] (Compl. ¶ 24 (emphasis supplied)). Plaintiff sells on Amazon a FANCII®-branded jewelers' loupe (the "Product"), which it lists as "Fancii LED Illuminated 20X Jewelers Loupe Magnifier, Triplet Glass - Premium Aluminum Magnifying Eye Loop [sic] Best for Jewelry, Diamonds, Gems, Coins, Engravings and More!" (the "Product Page"). (Compl. ¶ 31); *Fancii LED Illuminated 20X Jewelers Loupe Magnifier, Triplet Glass - Premium Aluminum Magnifying Eye Loop Best for Jewelry, Diamonds, Gems, Coins, Engravings and More!*, https://www.amazon.com/Fancii-Illuminated-Jewelers-Magnifier-Triplet/dp/B015VGEBS4/. Plaintiff alleges that Defendants caused a series of video shorts promoting Carson products to appear on the Product Page. (Compl. ¶¶ 29–35). These video shorts, the thumbnails for which appear in Plaintiff's Exhibit 1, were each labeled "Manufacturer Video." (Dkt. No. 15 ("Pl. Ex. 1")). Four of the video shorts' titles consist of "Carson" followed by a product name. (*Id.*). The fifth, however, is titled "Fancii LED Illuminated 20X Jewlers Loupe Magnifier, Triplet Glass - Premium Aluminum Magnifying Eye Loop Best for Jewelry, Diamonds, . . . . (*Id.*; Dkt. No. 15-1 ("Pl. Ex. 2")). Despite the title, "the content of the video included Carson's trademark and advertised—in an infomercial format—Defendant's competing jewelers' loupe, the Carson MT-33, MagniTouch™." (Compl. ¶¶ 32–33 (emphasis omitted)). Plaintiff alleges that Carson deliberately orchestrated this scheme to "drive sales to [its] own linked goods," diverting customers from Plaintiff's Product Page to that of Defendants. (*Id.* ¶ 28). Plaintiff further maintains that the use of Plaintiff's Mark in the title caused consumer confusion. (*Id.* ¶ 34). In particular, because the video shorts were tagged "Manufacturer Video," Plaintiff contends that "consumers are likely to be confused into believing either (a) that Carson is the manufacturer of Fancii's products, when it is not, and/or (b) that Carson's products are being offered or endorsed by Fancii, when they are not." (*Id.* ¶ 35).

Defendants strenuously object to Plaintiff's allegations. Defendants deny the factual allegations outright, stating that neither Carson, Cameron, nor any other Carson employee caused the videos at issue to appear on Plaintiff's Product Page. (Cameron Decl. ¶¶ 32–33, 36–41). Defendants also urge that Plaintiff's allegations are absurd because Defendants desire to avoid association with Plaintiff's products. (*Id.* ¶ 42). Finally, Defendants argue that the action is moot, because the videos no longer appear on the Product Page. (*Id.* ¶¶ 46, 48; *see generally* Dkt. No. 10 ("Deft. Mem. Law")).

---

[3] These are distinct from "product videos," which only merchants may upload and which appear in the descriptive portion of a product page. (Dkt. No. 13 ("Pl. Reply Mem.") at p. 5).

C. The Evidentiary Hearing

The undersigned held an evidentiary hearing on August 7, 2019 (the "Hearing"). (Minute Entry dated 8/7/2019). Because Plaintiff's case hinges on whether Defendants in fact caused the video shorts to appear on Plaintiff's Product Page, I informed the parties that I hoped to determine how the videos came to be on the Product Page. (Transcript of Hearing ("Tr.") at pp. 2–3). The following is a summary of relevant testimony from the Hearing.

The parties presented testimony from two witnesses. Plaintiff's witness was Brendan Zheng, the director of Plaintiff. (*See* Dkt. No. 1 at p. 15; Zheng Decl.). At the Hearing, Mr. Zheng identified himself as Plaintiff's founder and Chief Executive Officer. (Tr. at p. 4). Defendants' witness was Denise Yazak, an employee of Carson since November 2017. (*Id.* at p. 48). Ms. Yazak's title is Digital Content Manager. (*Id.* at p. 47). In her position at Carson, Ms. Yazak creates digital content and maintains web pages on the Amazon Europe and Amazon U.S. platforms. (Tr. at p. 47). Only one other employee, Brian Kaplan, contributes to managing Carson's Amazon U.S. account. (*Id.* at p. 58). (Ms. Yazak explained that Mr. Cameron and Mr. Kaplan, who assisted Mr. Cameron in the preparation of his declaration, did not appear because they were out of state for pre-scheduled trade shows. (*Id.* at pp. 48–49, 60).)

*1. Amazon Processes*

Mr. Zheng testified that Plaintiff is what's known as a "third-party seller" on Amazon. (*Id.* at p. 8). This means that Plaintiff sends its goods to Amazon (at no up-front cost to Amazon) and receives a commission for every instance of its product that Amazon sells. (*Id.*). In contrast, Carson enjoys "vendor" or "manufacturer" status with Amazon. (*Id.* at p. 9). In traditional wholesale fashion, vendors sell their products directly to Amazon. (*Id.* at pp. 8–9). Third-party sellers ("sellers") such as Plaintiff use an Amazon portal called "Seller Central," whereas wholesale vendors ("vendors") such as Carson use a portal called "Vendor Central." (*Id.* at pp. 10–11). Plaintiff does not have, and has never had, access to Vendor Central. (*Id.* at pp. 11, 21). When vendors or sellers (collectively, "merchants") list products on Amazon, each product page is assigned a unique numeric identifier called an "ASIN."[4] (*Id.* at p. 15).

Mr. Zheng conceded that he does not know for a fact that Carson caused the videos to appear on Plaintiff's Product Page. (*Id.* at p. 41). Rather, he inferred Defendants' culpability from non-vendor users' inability to post videos labeled "Manufacturer Video." Mr. Zheng and Ms. Yazak both stated that when a non-merchant account-holder posts a related video to a product page, certain identifying information (such as a username or simply "customer video") will be publicly displayed with the video. (*Id.* at pp. 12–14, 17–18, 33, 54). Were Mr. Zheng to upload a video to his own product page using his *seller* account, that video would be designated a "seller video," because of the account's association with the product page. (*Id.* at pp. 19, 22; *see* Pl. Ex. 1[5]). Mr. Zheng uses the same process non-merchant users use to upload video. (Tr. at pp. 22, 24–25). Mr. Zheng identified Plaintiff's Exhibit 3 (Dkt. No. 15-2) as a snapshot of the screen that

---

[4] While Plaintiff could not recall the meaning of this acronym, the Complaint indicates that it stands for "Amazon Standard Identification Number." (Compl. ¶ 25).

[5] Although one video link seen in this Exhibit is marked "Seller Videos," Mr. Zheng denies having uploaded it himself. (Tr. at pp. 20–21).

appears when he, as a seller, clicks "upload a video."[6] (Tr. at p. 24). Mr. Zheng pointed out that while there is a text-entry field for a "Title" or video description, as well as a place to designate the ASIN for the product page on which the user wishes to place the video, there is no place to indicate that the video is a "Manufacturer Video." (*Id.* at p. 25). That label "is not an editable field," he explained. (*Id.* at p. 22).

Mr. Zheng testified that for a video short to be designated a "Manufacturer Video," that video would need to be uploaded by a user with access to Vendor Central. (*Id.* at p. 14). However, the Court cannot accept this testimony, because it is not based on personal knowledge. Fed. R. Evid. 602; (Tr. at pp. 19, 21). On cross-examination, Mr. Zheng conceded that he lacks personal knowledge as to whether it is possible for vendors to post "Manufacturer Videos" to the "Related Video Shorts" section of product pages. (Tr. at pp. 32–33). Mr. Zheng testified further about the process whereby a vendor could upload video to a product page (*Id.* at pp. 14, 18), but because Mr. Zheng has no personal knowledge of this process, the Court will not recite this testimony here.

Ms. Yazak testified that, contrary to Mr. Zheng's unfounded assertions, vendors, as a technical matter, cannot possibly use Vendor Central to upload related videos to a competitor's page at all, let alone to designate such videos "Manufacturer Video."[7] (*Id.* at pp. 53–54). Ms. Yazak testified that Carson uploads videos to Amazon exclusively through Vendor Central, because it uses product videos, as opposed to video shorts. (*Id.* at p. 61). Vendor Central has no interaction with the related short videos, or video shorts; a merchant can upload video shorts only from its account or the product page, rather than the Vendor Central portal. (*Id.* at pp. 53–54). This coheres with Mr. Zheng's testimony about his own experience with posting video shorts. (*See id.* at pp. 67–68).

Based on Ms. Yazak's review of Carson's Amazon activity logs[8] (from both her own account and that of Mr. Kaplan), Carson never posted a video to Plaintiff's Product Page, never posted a video with "Fancii" in the title, and never posted on any other competitor's Amazon product page. (*Id.* at pp. 56, 65–67). Ms. Yazak testified that there is no possibility that Carson caused the subject video shorts to appear on Plaintiff's Product Page. (*Id.* at p. 57). Ms. Yazak testified that only she and Mr. Kaplan have "permissions" or capacity to upload videos through

---

[6] The undersigned noted but did not sustain Defendant's objection, which was based on relevance: Defendants urged that this exhibit is not relevant because it pertains to the process used by sellers, and Plaintiff alleges that the *vendor* process was used here. (Tr. at p. 25). Defendants noted that because Plaintiff has no personal knowledge of the vendor process, he cannot use this exhibit to draw a distinction between the two processes. (*Id.*).

[7] Ms. Yazak described two processes (one former and one current) that she has used to upload *product videos* to Amazon pages using Vendor Central. (*Id.* at pp. 52–53; *see also* Cameron Decl. at p. 6). These videos appear "at the top of the [product] page," not in the related videos section. (Tr. at p. 54). Although Plaintiff did not object to the discussion of the product video-upload processes at the Hearing, its Reply Memorandum contends that "Defendants— in a blatant attempt to confuse the Court—are comparing apples to oranges" by describing the process for uploading product videos, rather than video shorts. (Pl. Reply Mem. at p. 5). Whether or not this information was introduced to cause confusion, the Court finds it only marginally relevant and not worthy of reproduction here.

[8] These logs reflect activity pursuant to a "case," or help ticket opened with Amazon support staff, rather than *all* activity associated with a certain account or ASIN. (Tr. at p. 55). Ms. Yazak and Mr. Kaplan use different log-in credentials to access Carson's merchant accounts, and each user is only able to see the logs relating to tickets he or she opened. (*Id.* at pp. 64, 67). This limitation is inconsequential, however, because Ms. Yazak knows Mr. Kaplan's log-in credentials and was able to review the logs visible from his account prior to the hearing. (*Id.* at pp. 66–67).

Carson's Amazon account, and that she would know if any other person had done so. (*Id.* at pp. 59, 65–66).

Ms. Yazak further testified that the morning of July 4, 2019, when she was shown the verified complaint and consulted about the process of uploading videos to Amazon pages, she performed a search on Amazon using the ASIN that appeared in the Complaint. (*Id.* at pp. 49–50; *see* Compl. ¶ 29). This search led her to the Product Page, on which no videos appeared. (Tr. at p. 50). (Ms. Yazak had not viewed the videos on the Product Page prior to this date, and she was unable to determine whether the videos had existed on the product page on July 3, 2019, the date the Complaint was filed. (*Id.* at p. 51).) Ms. Yazak testified that she visited the Product Page again on the day prior to the Hearing, at which time no videos appeared thereon. (*Id.*).

Based on Ms. Yazak's experience with Amazon,[9] to effectuate the removal of a video from a product page, a merchant can contact Amazon Support, open a case, and ask the Vendor Central or Seller Central support staff to remove the video. (*Id.*). Amazon advertises a response time of 24 to 48 hours, but in Ms. Yazak's experience, removal may occur immediately. (*Id.*).

In Mr. Zheng's experience, Amazon itself has not posted videos to the incorrect product page. (*Id.* at p. 27). (In contrast, Ms. Yazak noted that, in her experience, there have been instances in which Amazon's "wires have gotten crossed," with the result being that images of other products erroneously appeared on Carson's product pages.[10] (*Id.* at p. 57).) Mr. Zheng averred that, though Plaintiff has "hundreds" of other competitors, to his knowledge, no other competitor's products have appeared in videos on Plaintiff's Product Page. (*Id.* at p. 28). When the undersigned pointed out that videos advertising products other than Carson's or Plaintiff's appear in Plaintiff's Exhibit 1, Mr. Zheng corrected himself, clarifying that no such videos *with Plaintiff's Marks in the title* had appeared.[11] (*Id.* at pp. 28–29). Mr. Zheng stated that he did not know who had posted the videos that appear in Plaintiff's Exhibit 1 but have neither "Fancii" nor "Carson" in their titles. (*Id.* at p. 29). Mr. Zheng has not sued these users. (*Id.* at p. 30).

### 2. *Keyword Advertising on Amazon*

In addition to the testimony concerning Amazon processes, there was some discussion directed at Plaintiff's credibility and Defendants' incentives (or lack thereof) to post the subject videos. This discussion was not illuminating, with one exception. Under cross-examination about Defendants' plausible motivations, Mr. Zheng acknowledged that merchants are permitted to pay to advertise their own products on a competitor's product page.[12] (*Id.* at p. 40). On any given page,

---

[9] Ms. Yazak personally has not removed related videos (video shorts), but she has removed product videos. (Tr. at p. 52). She stated that the distinction is immaterial in this context: the relevant portal has a designated link for "video upload" and one for "video removal," and it does not distinguish between product videos and video shorts. (*Id.* at p. 69).

[10] Ms. Yazak has seen related video on Carson's products, but she has not seen any that were uploaded directly by Carson. (*Id.* at p. 61). She qualified this statement by emphasizing the high number of Carson product pages, but she confirmed that uploading related videos is not part of "Carson's . . . marketing strategy." (*Id.*).

[11] In fact, Plaintiff's Exhibit 2 shows at least two videos with "Fancii" in the title appearing in the "Related videos" sidebar. (Dkt. No. 15-1). This was not addressed at the Hearing.

[12] Although Mr. Zheng's testimony implied that sponsoring merchants could identify specific product pages on which their advertisements (*see* Tr. at p. 45), this was not made definitively clear.

6

said Mr. Zheng, sponsored links to numerous competitor products will appear in various forms. (*Id.* at pp. 40–41). These features will bear some indication that they are sponsored advertisements. (*Id.* at p. 45). Ms. Yazak, in turn, stated that Carson has employed sponsored advertisements, including on competitors' product pages. (*Id.* at p. 70). To do so, Carson uses "keyword advertising," and specifically a mixture of manual and auto-select keyword advertising. (*Id.*). (These terms were not defined at the Hearing.) Ms. Yazak personally had not used "Fancii" or other competitor names in this process, but she acknowledged that Mr. Kaplan or a predecessor may have done so. (*Id.* at p. 71). Though it "doesn't have anything to do with video uploads" (*Id.*), this testimony is significant because it lends important context to Plaintiff's assertion that Defendants had "admitted to using [Plaintiff's] FANCII® trademark in advertising on Amazon." (Pl. Reply Mem. at p. 5).

Based on this testimony, it appears to the Court that Plaintiff deliberately misrepresented the keyword advertising process in its Reply Memorandum. The deposition excerpt attached to the Lin Declaration appears to indicate that Carson has used "Fancii" as a keyword in developing sponsored advertising. (Dkt. No. 14-1 at pp. 3, 5). The relevant testimony was as follows:

> Q [Plaintiff's attorney]: [Have you] [t]argeted . . . other competitors other than Fancii with that kind of advertising?
> A [Cameron]: I don't know. I don't know all the keywords that [Brian Kaplan] uses.
> . . .
> Q: How do you know that [Carson] did Fancii?
> A. I asked Brian yesterday to give me a summary of what he did, and he told me three different types of ads; and I asked him has he ever used the word Fancii, and he says yes, he has.

(*Id.* at p. 5). The most plausible interpretation of this testimony, given the context provided and the discussion at the Hearing, is that the term "Fancii" was used *behind the scenes* to determine where advertisements would appear, and not that the mark was *displayed* in the advertisements themselves. In characterizing the testimony as a clear-cut admission of trademark infringement, Plaintiff inserts language that warps the import of the deposition testimony. I find, therefore, that Plaintiff's assertions of admitted infringement should be met with heavy skepticism.

## II. Legal Standard

The Second Circuit Court of Appeals has held that to establish its right to a preliminary injunction or TRO, a movant "must show: (1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." *Random House, Inc. v. Rosetta Books LLC*, 283 F.3d 490, 491 (2d Cir. 2002) (citing *Zervos v. Verizon New York, Inc.*, 252 F.3d 163, 172 (2d Cir. 2001)); *see Perry v. Perry*, No. 12-CV-5727 (NGG) (MDG), 2012 WL 12875462, at *1 (E.D.N.Y. Nov. 28, 2012) (identical standards govern preliminary injunction and TRO). The movant bears the burden of establishing these elements by clear and convincing evidence. *Masino v. Montelle*, No. 05-CV-2447 (ERK) (RML), 2005 WL 8159617, at *5 (E.D.N.Y. July 14, 2005) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)); *see Nat'l Commodities Co. v. Viret*, 296 F. 664, 664 (2d Cir. 1924). This high standard of proof is imposed in recognition of the "extraordinary and drastic" nature of the remedy. *Sussman v. Crawford*, 488 F.3d 136, 139 (2d Cir. 2007) (quoting *Mazurek*,

520 U.S. at 972 (1997)); *Seligco Food Corp. v. Atl. Processing, Inc.*, No. 81-CV-2417 (JM), 1981 WL 48180, at \*4 (E.D.N.Y. Sept. 9, 1981).

The likely prospect of irreparable harm is a critical threshold issue for injunctive relief. *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir. 1990) (citations omitted). The movant must show that such harm is "imminent, not remote or speculative," and that it is "incapable of being fully remedied by monetary damages." *Id.* (citing *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989); *Loveridge v. Pendleton Woolen Mills, Inc.*, 788 F.2d 914, 917–18 (2d Cir. 1986)).

## III. Discussion

### A. Likelihood of Success on the Merits

Plaintiff's claims sound in the following causes of action: infringement of registered trademark in violation of Section 32 of the Lanham Act, 15 U.S.C. Section 1114(1); false designation of origin in violation of Section 43 of the Lanham Act, 15 U.S.C. Section 1125(a)(1)(B); common law unfair competition; and unfair and deceptive trade practices in violation of New York General Business Law Section 349.

#### 1. *Lanham Act Claims*

To prevail on a trademark claim brought under Section 32 or 43(a) of the Lanham Act, a plaintiff must prove (1) that its mark is "entitled to protection" under that Act, and (2) that "defendant's use of the mark is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods." *Virgin Enterprises Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003) (citing *Gruner + Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072, 1074 (2d Cir. 1993)); *see also Am. Auto. Ass'n, Inc. v. Limage*, No. 15-CV-7386 (NGG) (MDG), 2016 WL 4508337, at \*2 (E.D.N.Y. Aug. 26, 2016); *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 114 (2d Cir. 2006). The defendant's use must be "in commerce," "'in connection with the sale . . . or advertising of goods or services,'" and "without the plaintiff's consent." *1-800 Contacts, Inc. v. WhenU.Com, Inc.*, 414 F.3d 400, 407 (2d Cir. 2005) (quoting 15 U.S.C. § 1114(1)(a); citing *Time, Inc. v. Petersen Publ'g Co.*, 173 F.3d 113, 117 (2d Cir. 1999); *Genesee Brewing Co., Inc. v. Stroh Brewing Co.*, 124 F.3d 137, 142 (2d Cir. 1997)) (ellipsis in original).

A defendant's *use* of a plaintiff's mark is the *sine qua non* of Lanham Act claims under Sections 32 and 43(a). Here, the use alleged consists of Defendants' posting a Carson video short with "Fancii" in the title. However, Plaintiff has failed to establish that this occurred. Because Plaintiff has not shown that Defendants caused the video in question to appear on the Product Page, the essential element of use is absent.

In addition to failing to offer direct evidence that Defendants caused the videos to appear on the Product Page, Plaintiff fails to provide viable factual support for its theory that, as an Amazon vendor, Carson has the technological capability to post videos designated "Manufacturer Video" to its competitors' product pages. On this point, Plaintiff provided only the testimony of Mr. Zheng, who has no personal knowledge of the process and therefore cannot testify thereto. Fed. R. Evid. 602. Plaintiff's dearth of proof is compounded by Ms.Yazak's competing testimony that Carson does not upload videos through Vendor Central—and even if it did, the company would not be able to upload video shorts this way. In short, both parties maintain that virtually any

person with an Amazon account can upload related video shorts to a product page,[13] yet both ardently deny their own capacity to designate such videos "Manufacturer Video." Critically, Plaintiff has not produced competent evidence to overcome Defendants' denials.

The Court allows that the competitive relationship between Carson and Plaintiff makes it suspicious that videos of Carson products in particular would appear on Plaintiff's Product Page. However, this circumstantial evidence does not reach the "clear and convincing" threshold. Plaintiff's evidence is particularly insufficient given the sworn testimony, offered by Defendants, that Defendants did not and *cannot* cause such a thing to occur.

Because Plaintiff has not established that the fundamental element of use is present here, I find that Plaintiff is not likely to succeed on the merits of its Lanham Act claims.

### 2. *State Law Claims*

Unfair competition is a common law tort. "Under New York law, the essence of an unfair competition claim is that 'the defendant has misappropriated the labors and expenditures of another' and has done so in bad faith." *Coca-Cola N. Am. v. Crawley Juice, Inc.*, Nos. 09-CV-3259 (JG) (RML), No. 09-CV-3260 (KAM) (RML), 09-CV-3279 (ERK) (RML), 2011 WL 1882845, at *6 (E.D.N.Y. May 17, 2011) (quoting *Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1044 (2d Cir. 1980); additional citations omitted); *see Carson Optical, Inc. v. Prym Consumer USA, Inc.*, No. 11-CV-3677 (ARL), 2013 WL 1209041, at *5 (E.D.N.Y. Mar. 25, 2013). With similar breadth, NY General Business Law Section 349 proscribes "[d]eceptive acts or practices in the conduct of any business, trade, or commerce . . . ." NY GEN. BUS. LAW § 349(a).

Although these causes of action are noted for their breadth, each requires some affirmative act by the defendant, whether misappropriation or another deceptive act or practice. Because Plaintiff has failed to trace its alleged injuries to any affirmative act by the Defendants, Plaintiff has not persuaded the Court that its claims are likely to be meritorious.

### B. Probability of Irreparable Harm

A plaintiff seeking injunctive relief faces a very high bar: it "must show that it is *likely* to suffer irreparable harm if equitable relief is denied," and "[l]ikelihood, of course, sets a higher standard than 'possibility.'" *JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir. 1990) (internal citations omitted). Because the videos at issue no longer appear on the Product Page, and apparently have not so appeared since at least the day after the Complaint was filed, there is no basis for finding that irreparable harm is likely.

Voluntary cessation may form an adequate basis for denying injunctive relief. It is true that voluntary cessation of unlawful activity does not render a case moot unless "it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur"—a "formidable burden" that must be borne by the party asserting mootness. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 169, 190 (2000) (citations omitted). But this maxim states a jurisdictional rule; contrary to Plaintiff's implication, it does not shift the burden of proving the probability (or non-probability) of irreparable harm from the plaintiff to the defendant on a motion for injunctive relief. As the Second Circuit has held, "While a defendant's 'voluntary cessation of

---

[13] Ms. Yazak noted that this function is only available to Amazon account-holders who have passed a certain purchase threshold (Tr. at p. 68), but that limitation is not relevant here.

a challenged practice does not deprive a federal court of its power to determine the legality of the practice,' it is nonetheless 'an important factor bearing on the question whether a court should exercise its power' to entertain a request for injunctive relief or declare it moot." *Holland v. Goord*, 758 F.3d 215, 223 (2d Cir. 2014) (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)); *see also Patrick v. Success Acad. Charter Sch., Inc.*, No. 17-CV-6846 (PKC) (RLM), 2017 WL 6557478, at *5 (E.D.N.Y. Dec. 22, 2017) (defendants' voluntary action weighed strongly against injunctive relief); *Pan Am. World Airways, Inc. v. Flight 001, Inc.*, No. 06 Civ. 14442 (CSH), 2007 WL 2040588, at *6 (S.D.N.Y. July 13, 2007) (While "[s]ome district courts in the Second Circuit have held that defendant's voluntary cessation of activity 'affords no reason for denying a preliminary injunction' . . . such a rule is at odds with the nature of a preliminary injunction, which is an "extraordinary equitable remedy.") (internal citations omitted). In other words, the party seeking relief still must prove, by clear and convincing evidence, that irreparable harm is probable.

Plaintiff cites to only one case in which a preliminary injunction issued despite voluntary cessation of the alleged infringement. (Pl. Reply Mem. at p. 4). This decision, from the Eastern District of Wisconsin, rested on the doctrine that "courts presume irreparable harm to the plaintiff where there are violations of the Lanham Act." *H-D U.S.A., LLC v. SunFrog, LLC*, No. 17-CV-711 (JPS), 2017 WL 3261709, at *2 (E.D. Wis. July 31, 2017). Here, in contrast, I do not find such violations. Moreover, even if such violations were present, courts in this Circuit do not automatically presume irreparable harm from violations of the Lanham Act. *See Abbott Labs. v. Adelphia Supply USA*, No. 15-CV-5826 (CBA) (MDG), 2015 WL 10906060, at *8 (E.D.N.Y. Nov. 6, 2015), *aff'd sub nom. Abbott Labs. v. H&H Wholesale Servs., Inc.*, 670 F. App'x 6 (2d Cir. 2016)

Because Plaintiff has not shown by clear and convincing evidence that irreparable harm is at all likely, the relief sought must be denied.

## CONCLUSION

For the foregoing reasons, I find that Plaintiff has failed to establish by a preponderance of the evidence, let alone clear and convincing evidence, that injunctive relief is warranted. Thus, I respectfully recommend that Plaintiff's petition for injunctive relief be DENIED. Plaintiff's counsel is hereby directed to serve copies of this Report and Recommendation upon Defendants by regular and certified mail and to file proof of service on CM/ECF. Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Honorable Carol Bagley Amon within fourteen (14) days of receipt hereof. Failure to file timely objections waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

**SO ORDERED.**

*Ramon E. Reyes Jr.*
Ramon E. Reyes, Jr.
U.S. Magistrate Judge

Dated: August 21, 2019
Brooklyn, NY