UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————

№ 19-CV-3886 (RPK) (RER)

———————————

RQ INNOVATIONS, INC.,

Plaintiff,

VERSUS

CARSON OPTICAL, INC. AND RICHARD CAMERON,

Defendants.

———————————

REPORT & RECOMMENDATION

———————————

February 4, 2021

To the Honorable Rachel P. Kovner
United States District Judge

RAMON E. REYES, JR., U.S.M.J.:

Your Honor has referred to me plaintiff RQ Innovations, Inc.'s ("Plaintiff" or "RQ") motion for voluntary dismissal without prejudice pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure. (Dkt. Entry dated 9/22/20; Dkt. Nos. 23, 23-1 ("Pl's. Mem.")). Defendants Carson Optical, Inc. and Richard Cameron (collectively, "Defendants") oppose the motion, arguing that dismissal should be "with prejudice unless the plaintiff withdraws its motion . . . within seven (7) days" and thereafter the case should proceed promptly to summary judgment briefing. (Dkt. No. 24 ("Defs.' Opp'n") at 2). For the reasons which follow, I respectfully recommend that Plaintiff's motion for voluntary dismissal without prejudice be GRANTED.

## BACKGROUND

RQ filed this action for trademark infringement, false designation of origin and unfair competition on July 2, 2019. (Dkt. No. 1 ("Compl.")). This case centers on an Amazon.com feature known as related short videos ("related videos" or "video shorts"), which Plaintiff describes as brief, infomercial-style videos that "customers, manufacturers and sellers" can upload to product pages. (*Id.* ¶ 24). Plaintiff sold on Amazon a FANCII®-branded jewelers' loupe (the "Product"), which it lists as "Fancii LED Illuminated 20X Jewelers Loupe Magnifier, Triplet Glass - Premium Aluminum Magnifying Eye Loop [sic] Best for Jewelry, Diamonds, Gems, Coins,

1

Engravings and More!" (the "Product Page"). (*See Id.* ¶ 31).[1]

Plaintiff alleges that Defendants caused a series of video shorts promoting competing Carson products to appear on its Product Page. (Compl. ¶¶ 29–35). These video shorts were each labeled "Manufacturer Video." (*Id.* ¶ 29; Dkt. No. 15 ("Pl.'s Ex. 1")). Four of the video shorts' titles consist of "Carson" followed by a product name. (Pl.'s Ex. 1). The fifth, however, is titled "Fancii LED Illuminated 20X Jewelers Loupe Magnifier, Triplet Glass - Premium Aluminum Magnifying Eye Loop Best for Jewelry, Diamonds, . . . ." (Compl. ¶¶ 29–31; Dkt. No. 15-1). According to the Complaint, despite the title, "the content of the video included Carson's trademark and advertised—in an infomercial format—Defendant's competing jewelers' loupe, the Carson MT-33, MagniTouch[TM]." (Compl. ¶¶ 32–33 (emphasis omitted)). Plaintiff alleges that Carson deliberately orchestrated this scheme to "drive sales to [its] own linked goods," diverting customers from Plaintiff's Product Page to that of Defendants. (*Id.* ¶ 28). Plaintiff further maintains that the use of Plaintiff's Mark in the video title caused consumer confusion. (*Id.* ¶ 34). In particular, because the video shorts were tagged "Manufacturer Video," Plaintiff contends that "consumers are likely to be confused into believing either (a) that Carson is the manufacturer of Fancii's products, when it is not, and/or (b) that Carson's products are being offered or endorsed by Fancii, when they are not." (*Id.* ¶ 35).

Along with the Complaint, on July 2, 2019 Plaintiff filed a motion for a temporary restraining order and preliminary injunction. (Dkt. No. 2). Upon completion of the briefing on the motion, District Judge Carol B. Amon referred it to me for a report and recommendation. (Dkt. Entry dated 7/29/19). I held an evidentiary hearing on the motion on August 7, 2019, and at its conclusion set a schedule for the completion of all discovery within ninety days followed by a final pretrial conference on November 14, 2019. (Min. Entry dated 8/7/19). The central factual issue at the hearing was whether and how Defendants caused the video shorts to appear on Plaintiff's Product Page. Principally due to RQ's failure to proffer clear and convincing evidence that Defendants did cause the video shorts to appear on the Product Page, on August 21, 2019 I recommended that the motion for a temporary restraining order and preliminary injunction be denied. (Dkt. No. 17 at 8–9 ("Report and Recommendation")). No party having objected to the Report and Recommendation, Judge Amon adopted it on September 12, 2019. (Dkt. No. 18).

On November 12, 2019, after discovery had already closed,[2] Plaintiff requested an adjournment of the November 14th final pretrial conference and an extension of time to engage in discovery. (Dkt. No. 20). In the period between the preliminary injunction hearing and its extension request, RQ had subpoenaed documents from Amazon seeking to discover the source of the offending video shorts that had been posted to its Product Page, but Amazon had yet to produce its response to the subpoena. (*Id.* at 1–2). Thus, "[f]or avoidance of doubt, Plaintiff [sought] an extension of time to engage in discovery in the event that

---

[1] As of the writing of this report and recommendation, the Product was no longer available on Amazon.com. https://www.amazon.com/Fancii-Illuminated-Jewelers-Magnifier-Triplet/dp/B015VGEBS4/.

[2] Discovery closed on November 5, 2019— ninety days from August 7, 2019, when I set the discovery schedule.

2

Amazon's response identifies Defendants as the parties responsible for the infringing content on Plaintiff's product page." (*Id.* at 2). After holding a telephone conference on November 13, 2019, but not appreciating that discovery had already closed, I granted Plaintiff's request, adjourned the final pretrial conference and stayed discovery for sixty days or until Amazon responded to Plaintiff's subpoena, whichever occurred first. (Dkt. Entry dated 11/13/2019).

On February 7, 2020, twenty-six days after the stay of discovery had already expired,[3] RQ sought leave from Your Honor to move for voluntary dismissal of the Complaint without prejudice. (Dkt. No. 21).

**DISCUSSION**

**I.   Legal Standard**

Whether to grant dismissal pursuant to Rule 41(a)(2) is within the Court's sound discretion. *See Catanzano v. Wing*, 277 F.3d 99, 109 (2d Cir. 2001). The Rule provides, in pertinent part:

> Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper. . . . Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice.

Fed. R. Civ. P. 41(a)(2). Although voluntary dismissal without prejudice is not a matter of right, *Zagano v. Fordham Univ.*, 900 F.2d 12, 14 (2d Cir. 1990), in this Circuit there is a presumption that motions to voluntarily dismiss claims without prejudice should be granted, *e.g.*, *Fareportal, Inc. v. Travana, Inc.*, No 16 Civ. 9882 (ALC), 2019 WL 4141878, at *2 (S.D.N.Y. Aug. 30, 2019); *Parker v. Tougher Indus., Inc.*, No. 06 Civ. 400, 2013 WL 316389, at *1 (N.D.N.Y. Jan. 28, 2013); *Ascentive, LLC v. Opinion Corp.*, No. 10-CV-4433 (ILG) (SMG), 2012 WL 1569573, at *2 (E.D.N.Y. May 3, 2012); *Team Obsolete Ltd. v. A.H.R.M.A. Ltd.*, 216 F.R.D. 29, 36 (E.D.N.Y. 2003) (collecting cases).

Courts consider two lines of authority when deciding a motion to voluntarily dismiss. *See Camilli v. Grimes*, 436 F.3d 120, 123 (2d Cir. 2006). The first indicates that voluntary dismissal is improper if "the defendant would suffer some plain legal prejudice other than the mere prospect of a second lawsuit." *Id.* (quoting *Cone v. W. Va. Pulp & Paper Co.*, 330 U.S. 212, 217 (1947)). The second line follows the five "*Zagano* factors" and considers: "(1) the plaintiff's diligence in bringing the motion, (2) any undue vexatiousness on the plaintiff's part, (3) the extent to which the suit has progressed, including the defendant's efforts and expense in preparation for trial, (4) the duplicative expense of relitigation, and (5) the adequacy of the plaintiff's explanation for the need to dismiss." *Id.* (citing *Zagano*, 900 F.2d at 14). "These factors are not necessarily exhaustive and no one of them, singly or in combination with another, is dispositive." *Kwan v. Schlein*, 634 F.3d 224, 230 (2d Cir. 2011).

---

[3] The stay of discovery expired January 12, 2020—sixty days after November 13, 2019.

3

## II. Application

Conceding that there is no "'legal prejudice' in this context",[4] Defendants' opposition to the motion is "premised on the *Zagano* factors." (Defs.' Opp'n at 7 (citing *Camilli*, 436 F.3d at 124)). Defendants contend that an analysis of the *Zagano* factors counsels that dismissal without prejudice would be improper. (*Id.* at 7–13). I disagree.

### A. Plaintiff's Diligence in Bringing the Motion

The first factor—RQ's diligence in moving to dismiss without prejudice—weighs in its favor.

Courts often consider the length of time an action has been pending and the events that occurred during that period in determining a plaintiff's diligence. *See, e.g.*, *Bosteve Ltd. v. Murauszwki*, 110 F.R.D. 257, 259 (E.D.N.Y. 1986); *Guzman v. Hazemag U.S.A., Inc.*, 145 F.R.D. 308, 310 (E.D.N.Y. 1993). However, this factor is not dispositive and "[e]ven where litigation has been pending for four years, courts have not found that to be dispositive evidence that a party was not diligent." *Shaw Family Archives, Ltd. v. CMG Worldwide, Inc.*, No. 05 Civ. 3939 (CM), 2008 WL 4127549, at *6 (S.D.N.Y. Sept. 2, 2008) (citing *Thomas v. N.Y. Dep't of Corr. Servs.*, No. 00 Civ. 7163 (NRB), 2004 WL 1871060 (S.D.N.Y. Aug. 20, 2004)); *see also Cantanzo*, 277 F.3d at 110 (finding that, even though litigation was pending for twelve years, plaintiffs were not dilatory in bringing motion to voluntarily dismiss). Courts are more concerned with whether the plaintiff's efforts were "geared towards an efficient resolution." *U.S. Underwriters Ins. Co. v. United Pac. Assocs., LLC*, No. 05-CV-1012 (JFB) (KAM), 2006 WL 2038507, at *2 (E.D.N.Y. Jul. 19, 2006).

The more appropriate measure of diligence is whether a plaintiff moved to dismiss the complaint without prejudice within a reasonable period after an event that led to its decision not to pursue the action. *See, e.g.*, *Shaw*, 2008 WL 4127549, at *6 ("Because [plaintiff's] motion to dismiss was made shortly after a series of events that have made pursuit of the litigation far more difficult and inefficient, the Court finds that [plaintiff] acted diligently."); *Hinfin Realty Corp. v. Pittston Co.*, 206 F.R.D. 350, 355–56 (E.D.N.Y. 2008) ("The Court finds that the plaintiffs were diligent in bringing their motion to dismiss the action without prejudice because they filed it immediately after the events that led to their decision not to pursue the action at this time.")

Under either measure, RQ was reasonably diligent in bringing its motion. This case has been pending only since July 3, 2019, (Dkt. No. 1), and it was not until September 12, 2019 that the Court denied RQ's motion for a temporary restraining order and preliminary injunction, (Dkt. No. 18). The Court's decision provided the primary basis for Plaintiff's subpoena to Amazon—its lack of evidence that Defendants caused the offending video shorts to be posted to its Product Page—and its subsequent motion to dismiss. (*See* R. & R. at 8–9). Plaintiff filed its pre-motion letter to

---

[4] Merely facing the possibility of future litigation does not constitute legal prejudice. *E.g.*, *D'Alto v. Dahon Cal., Inc.*, 100 F.3d 281, 283 (2d Cir. 1996) (beginning "a litigation all over again does not constitute legal prejudice.") (citing *Jones v. SEC*, 298 U.S. 1, 19 (1936)).

4

voluntarily dismiss on February 7, 2020, after Amazon's continued failure to produce any information whatsoever, recognizing that it faced an uphill, and perhaps insurmountable burden going forward. (Dkt. No. 21). Notably, during this period Defendants refused to stipulate to dismissal without prejudice. (Pl.'s Mem. at 7–8). Despite Defendants' contentions of RQ's lack of diligence, (Defs.' Opp'n at 7–9), in this Court's view it cannot be said that the nearly five-month delay from issuance of the decision on the motion for injunctive relief (September 12, 2019) and the filing of RQ's premotion letter (February 7, 2020) was unreasonable.

B. Plaintiff's Undue Vexatiousness

The second *Zagano* factor weighs in RQ's favor.

Under the second *Zagano* factor, the Court looks for signs of undue vexatiousness by the plaintiff. *Camilli*, 436 F.3d at 123. In cases where "there is no evidence to suggest that the case was brought to harass the defendant," *Hinfin*, 206 F.R.D. at 356, or that a plaintiff had "ill-motive," *Shaw*, 2008 WL 4127549, at *6 (citation omitted), dismissal without prejudice is favored.

Here, there is little evidence of RQ's ill-motive or intent to harass Defendants. Granted, there is a history of animosity between the parties, Carson having sued Plaintiff twice before. (Pl.'s Mem. at 8; Defs.' Opp'n at 10). While Defendants have argued that RQ filed this action in retaliation for those lawsuits and without definitive proof that Defendants posted the allegedly offending videos to Plaintiff's Product Page, (Defs.' Opp'n at 10), I do not agree. Although Plaintiff has failed to sustain its burden on the motion for injunctive relief, I cannot conclude therefrom that it lacked a good faith basis to file this case. The standard on a motion for injunctive relief is quite high, and the failure to meet it does not indicate that a lawsuit was "bogus" or brought with ill-motive. The fact remains that the videos were on Plaintiff's Product Page prior to the filing of the lawsuit, and based on Plaintiff's belief that Defendants caused those videos to be posted, however mistaken that belief may have been, Plaintiff brought suit. (*See* Compl. ¶¶ 29–32). Based on all the evidence presented, I cannot conclude that Plaintiffs acted with ill-will or to harass Defendants. *See Jewelers Vigilance Comm., Inc. v. Vitale, Inc.*, No. 90 Civ. 1476, 1997 WL 582823, at *3 (S.D.N.Y. Sept.19, 1997) (while disapproving of plaintiff's litigation tactics, "absent concrete evidence of any ill-motive on Plaintiff's part, the Court declines to label Plaintiff's conduct 'vexatious.'"); *cf. Pac. Elec. Wire & Cable Co. v. Set Top Int'l Inc.*, No. 03 Civ. 9623 (JFK), 2005 WL 578916, at *5 (S.D.N.Y. Sept. 2, 2008) (finding vexatious conduct where plaintiffs "assured the Court, in no uncertain terms, that this case would continue" and "unilaterally and abruptly" canceled multiple depositions).

Further, courts generally find vexatiousness "where plaintiffs have assured the court and the defendants that they intended to pursue their claims prior to seeking a dismissal." *Shaw*, 2008 WL 4127549, at *7 (no ill motive where plaintiff notified court of its desire to dismiss claims as soon as pursuing them became unfeasible); *c.f. Pac. Elec.*, 2005 WL 578916, at *5; *SEC v. The Oxford Corp.*, 181 F.R.D. 269, 271 (S.D.N.Y. 1998) (finding undue vexatiousness where "[plaintiff] gave the Court and parties every reason to believe" that it intended to participate in discovery when it had no intention to do so but

5

nevertheless granting plaintiff's motion to voluntarily dismiss without prejudice). RQ has made no such affirmative assurances here. Indeed, after RQ's failure on the motion for preliminary injunctive relief, it fully recognized the need to obtain evidence from Amazon of Defendants' posting of the offending videos to its Product Page, and that the failure to obtain such evidence would result in voluntary dismissal. (Dkt. No. 26 at 4–5). Upon failure to obtain such evidence, it immediately sought Defendants' consent to dismiss this case without prejudice, which Defendants rejected, and this motion followed. (*See* Pl.'s Mem. at 7). This is certainly not an instance of vexatiousness.

C. The Extent to Which the Suit Has Progressed, Including Defendants' Efforts and Expense in Preparation for Trial

The third *Zagano* factor also weighs in favor of RQ. "Courts applying the *Zagano* factors frequently place the greatest emphasis on the efforts expended by the defendant in discovery and trial preparation and the corresponding prejudice the defendant would suffer if forced to relitigate." *Baldanzi v. WFC Holdings Corp.*, No. 07 Civ. 9551, 2010 WL 125999 (LTS) (GWG), at *4 (S.D.N.Y. Jan. 13, 2010). Although technically the discovery period has closed, no discovery has been conducted other than Plaintiff's non-party subpoena to Amazon. Aside from the motion for preliminary injunctive relief, no other motions have been filed, the parties have not engaged in any meaningful discovery and have done nothing to prepare for trial. Further pretrial proceedings have not been scheduled, let alone has a trial date been set. Under similar circumstances, courts have concluded that this factor weighs in favor of the plaintiff.

*See, e.g., A.V. by Versace, Inc. v. Gianni Versace S.p.A.*, 261 F.R.D. 29, 32–33 (S.D.N.Y. 2009) (granting motion to voluntarily dismiss after pre-trial conference held where majority of the activity in case related to injunction motion); *Universal Marine Med. Supply, Inc. v. Lovecchio*, No. 98-CV-3495 (ILG), 1999 WL 441680, at *6 (E.D.N.Y. May 7, 1999) (granting motion for voluntary dismissal where discovery was "far from complete"); *Team Obsolete*, 216 F.R.D. at 36 (granting motion for voluntary dismissal where plaintiff's decision to drop the claims was "certainly far from any trial date"); *see also Catanzano*, 277 F.3d at 110 (voluntary dismissal appropriate where, although litigation had been going on four years, "only halting discovery ha[d] taken place"); *cf. Zagano*, 900 F.2d at 14 (affirming denial of motion to voluntary dismiss where motion made ten days from trial date and parties had engaged in "extensive discovery"); *Am. Fed'n of State, Cnty. & Mun. Emp. Dist. Council 37 Health & Sec. Plan v. Pfizer, Inc.*, No. 12 Civ. 2237 (JPO), 2013 WL 2391713, at *4 (S.D.N.Y. June 3, 2013) ("The standard for concluding that a suit has progressed far enough to weigh against dismissal is high, and is usually satisfied only where substantial discovery, summary judgment motion practice, or trial preparation has occurred.").

D. The Duplicative Expense of Re-Litigation

The fourth *Zagano* factor weighs in RQ's favor as well. "The mere prospect of a second litigation" is insufficient in and of itself to rise to the level of legal prejudice. *D'Alto*, 100 F.3d at 283 (quoting *Jones*, 298 U.S. at 19); *see also Jaskot v. Brown*, 167 F.R.D. 372, 374 (S.D.N.Y. 1996) ("[T]he mere fact that the plaintiff may seek to include the

6

allegations contained in this complaint in a subsequent proceeding is not sufficient legal prejudice."). Yet, Defendants complain of just such a prospect. In particular, Defendants complain of having to duplicate the time they spent defending against the motion for preliminary injunctive relief. (Defs.' Opp'n at 12 ("The plaintiff moved for a temporary restraining order and preliminary injunction, which caused the defendants to expend significant resources early in this case. The defendants cannot reuse that time and a significant portion would have to be duplicated.")). Defendants' argument ignores that the purportedly offending videos have been removed from Plaintiff's Product Page, (Defs.' Opp'n at 8; Pl.'s Mem. at 4), and that Plaintiff's motion for injunctive relief has been denied, (R. & R.), and therefore it is highly unlikely that any re-litigation would involve a motion for preliminary injunctive relief based on the conduct alleged in the Complaint.

Defendants' argument also ignores that aside from the time and expense of litigating the motion for preliminary injunctive relief, they have expended very little, if any, additional resources. Defendants have neither served nor responded to any discovery, (Dkt. No. 20 at 2), and their counsel has appeared at only one in person status conference, (Min. Entry dated 7/15/2019), the evidentiary hearing, (Min. Entry dated 8/7/2019), and one telephone conference, (Min. Entry dated 11/13/2019). Clearly, neither discovery nor these conferences will have to be "re-litigated." Moreover, Defendants will be able to use much of whatever work they have done in this action to defend against any subsequent action in the unlikely event that RQ files another lawsuit against Defendants in this or another court based on the same conduct alleged in the Complaint. *See, e.g.*, *Versace*, 261 F.R.D. at 33 ("Even if plaintiff were to re-litigate the remaining claims in a future action, whatever work that defendants have done in preparing for trial can easily be used in a subsequent, similar action." (citation and quotation marks omitted)).

Further, if Defendants are correct that RQ lacks a factual or legal basis for its claims, and asserts the same or similar claims in a subsequent action, Defendants will simply be able to move to dismiss those claims, and if it prevails, save itself altogether from bearing the expense of any additional discovery. *C.f. Shaw*, 2008 WL 4127549, at *9 (where defendants argued, among other things, that "plaintiffs' claims are entirely without merit" court found duplicative expenses minimal because defendants could once again move to dismiss claims in subsequent action).

### E. The Adequacy of Plaintiff's Explanation for the Need to Dismiss

The final *Zagano* factor—the adequacy of RQ's explanation for the need to dismiss— also weighs in favor of dismissal without prejudice.

RQ seeks dismissal without prejudice because "the subject videos are down, Defendants said that they would not post such videos and *Plaintiff does not want to spend additional money on these temporarily resolved issues in the face of substantial trial and litigation expenses in other actions with the same parties*." (Pl's. Mem. at 8 (emphasis added)). Defendants contend that Plaintiff's proffered reason for dismissal is not genuine and that if Plaintiff was "concerned about litigation costs, it would not have filed this frivolous action in the first instance, and *certainly would not have pressed the matter through discovery*." (Defs.' Opp'n at 12 (emphasis added)).

7

I find Plaintiff's explanation to be credible. Courts frequently conclude that economic considerations constitute a reasonable explanation for seeking dismissal without prejudice. *See, e.g., Hinfin*, 206 F.R.D. at 357 (granting motion to voluntarily dismiss and noting that "[e]conomic concerns, such as those raised by the plaintiff, almost always dictate the course of litigation, and this case is no exception"); *Omega Inst., Inc. v. Univ. Sales Sys., Inc.*, No. 08 Civ. 6473, 2010 WL 475287, at *5 (W.D.N.Y. Feb. 5, 2010) (motion to voluntarily dismiss granted where "plaintiff did not and presently does not have the resources to continue litigating this matter"); *Versace*, 261 F.R.D. at 33 (motion to voluntarily dismiss granted where defendants would be unable to pay any judgment obtained against them). Moreover, Defendants' contention concerning litigation costs rings hollow, especially as Plaintiff has not "pressed the matter through discovery." (*See* Defs.' Opp'n at 12). Indeed, Plaintiff has not served on Defendants any document requests, interrogatories, deposition notices, requests for admission, or any other discovery device contemplated under the Federal Rules of Civil Procedure. (Dkt. No. 20 at 2). Plaintiff sought dismissal as soon as it became clear that Amazon would not provide the evidence Plaintiff needed to sustain its claims, before ever having served a single discovery request on Defendants, and after Defendants refused to stipulate to dismissal without prejudice. (Dkt. No. 21). Defendants' contention in this regard amounts to nothing more than their mantra that this action is frivolous, which as discussed above is overblown.

In addition, there is no indication that RQ seeks dismissal to "avoid the prospect of an adverse decision on a dispositive motion." *Galasso v. Eisman, Zucker, Klein & Ruttenberg*, 310 F. Supp. 2d 569, 572–73 (S.D.N.Y. 2004) (motion for voluntary dismissal denied where plaintiff's explanation—"to preserve plaintiff's right to be heard, obtain discovery and obtain justice"—was "patently inadequate" and "insulting" to the court). No such dispositive motion has ever been proposed, let alone filed, other than Defendants' eleventh-hour suggestion in opposition to the instant motion. (Pl.'s Mem. at 2; Defs.' Opp'n at 2).

Finally, even if Plaintiff's true motivation in seeking dismissal without prejudice is to thwart the preclusive effect of a dismissal with prejudice,[5] that would not in and of itself counsel against granting the motion. *Catanzano*, 277 F.3d at 110 (plaintiffs' "explanation, that they have brought the motion in order to facilitate an end to the litigation but that they wish to avoid preclusive effects of the district court's ruling on this claim, is adequate."); *c.f.*, *United States v. Any & All Funds on deposit at JPMorgan Chase Account Number 31442003*, No. 12-CV-7530 (GBD), 2013 WL 5511348, at *1, *4 (S.D.N.Y. Oct. 2, 2013) (Government's inability to obtain "critical evidence" at the time was an adequate explanation for dismissal without prejudice).

---

[5] *See* Defs.' Opp'n at 12 ("Indeed, Mr. Zheng was so seemingly unconcerned about the videos that he did not even bother to check if the videos were still on the plaintiff's Product Page at the time the lawsuit was filed. *Hence, the plaintiff's inability to muster a reasonable explanation suggests that the real reason is the plaintiff wishes to avoid an adverse decision in this case.* (emphasis added)).

8

In sum, because Defendants will suffer no legal prejudice and the *Zagano* factors weigh in Plaintiff's favor, I respectfully recommend that the Court grant Plaintiff's motion to dismiss the complaint without prejudice.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that RQ's motion be GRANTED and the Complaint be dismissed without prejudice. Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Honorable Rachel P. Kovner within fourteen days of receipt hereof. Failure to file timely objections may waive the right to appeal this District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

RESPECTFULLY RECOMMENDED

**/s/ Ramon E. Reyes, Jr.**

RAMON E. REYES, JR.
United States Magistrate Judge

Dated: February 4, 2021
    Brooklyn, NY